THE STATE v. HAYWARD, *Appellant.*

1.  **Pleading, Criminal** : INFORMATION, VERIFICATION OF. Where an·
    information is verified by the oath of a private citizen it must be by
    one having knowledge of the matters charged therein, and who is a·
    competent witness to testify against the accused. Only the prose-
    cuting attorney can make the verification upon information and·
    belief. R. S., §§ 1762, 1763.

2.  ———— : OBSCENE LITERATURE : INFORMATION : INDICTMENT. In a
    prosecution under Revised Statutes, 1879, § 1542, relative to obscene
    literature, the information or indictment must set out the obscene
    matter. It is not sufficient that it follow the language of the·
    statute.

*Appeal from Hannibal Court of Common Pleas.*—HON.
THEO. BRACE, Judge.

REVERSED.

*W. H. Russell* and *R. E. Anderson* for appellant.

(1) The information is insufficient in form because·
verified only by the oath of a private citizen and not by
the oath of the prosecuting attorney. Con. of Mo., art.·
2, § 12; *State v. Kelm,* 79 Mo. 515; R. S., 1879, §§ 1762,
1764, 2025. (2) The information is defective in substance.
That the information in such a case as this must either
set out the language charged to be obscene or aver as
a reason for not doing so, that it is too obscene to defile·
the records of the court, is settled by an overwhelming
weight of authority; and the current of decisions to
that effect in this country and in England is unbroken by·
a single adverse case. Wharton's Cr. Pl.· & Ev. (8th Ed.)·
§ 177; *Com. v. Tarbox,* 1 Cush. 66; *Com. v. Holmes,* 17·
Mass. 336; *U. S. v. Carll,* 105 U. S. 611; *U. S. v. Loftis,*
8 Sawyer C. C.; *U. S. v. Kaltmeyer,* 16 Fed. Rep. 760;·
*U. S. v. Gaylord,* 17 Fed. Rep. 435; *Stener v. State,*

(Wis.) 17 Reporter 670; Bish. on Cr. Proc. (2 Ed.) §§ 496, 497, 561; Heard's Cr. Pleading, pp. 202, 208, 209, 211; *Bradlaugh v. Regina*, E. L. R., 3 Q. B. D. 605; *State v. Hanson*, 23 Tex. 232; *State v. Pepper*, 68 N. C. 259; Wharton's Cr. Pl. & Pr. (8th Ed.) § 220, 221; Heard's Cr. Pl., pp. 162, 163, 165, 166; *State v. Weldon*, 70 Mo. 573; *State v. Davis*, 70 Mo. 467; *State v. Fisher*, 58 Mo. 256; *State v. Fay*, 65 Mo. 492; *State v. Rocheforde*, 52 Mo. 200; *State v. Hein*, 50 Mo. 362; *State v. Keel*, 54 Mo. 188; *State v. Garner*, 28 Mo. 90, 91; *State v. Evers*, 49 Mo. 545.

*Geo. A. Mahan*, prosecuting attorney, and *Thos. H. Bacon* for the State.

(1)   As in a prosecution for a criminal libel the constitution makes the truth an issuable defence (Art. II, sec. 14) the statute against circulating all obscene publications creates a statutory offence, not a criminal libel, and, therefore, not an obscene libel.   Moreover the possession of an obscene publication with intent to circulate is not a common law offence.   *Dugdale v. Regina*, 1 Ellis & Blackburn 435; S. C. 10 Eng. L. & E. 380.   And, therefore, the statute on this subject creates the offence.   (2) This offence inheres not, as in case of obscene libel, in special language or representation, but in the quality of a book or pamphlet as obscene; the indictment may simply identify the pamphlet as in this case by its title the same as any instrument.   R. S. 1879, sec. 1816.   The only requirement is that the pamphlet be sufficiently described and this was done.   As the statute does not require the pamphlet to contain language, the indictment need not aver it or specify any language as used.   (3) The principal American statutes address themselves to "obscene language."   R. S., Mass., 1836, p. 130, § 10; R. S., Vermont, 1839–50, ch. 108, p. 561.   In Missouri and Illinois the statute is leveled generally at "obscene pamphlets."   In the latest case (*Fuller v. The People*, 92 Ill. 182) the court held good an indictment in the lan-

guage of such statute. *State v. Mitchell,* 6 Mo. 147; *State v. Presbury,* 13 Mo. 345; *State v. Goss,* 74 Mo. 592; *State v. Bregard,* 76 Mo. 322.

SHERWOOD, J.—This prosecution was instituted before N. Dick, recorder and *ex-officio* justice of the peace, with whom was filed the following information:

STATE OF MISSOURI, ⎫
· County of Marion. ⎬ ss.

Before Nathaniel Dick, Recorder of the City of Hannibal and *ex-officio* Justice of the Peace within and for the City of Hannibal in Mason township, Marion County, Missouri.

State of Missouri, Plaintiff, ⎫
        against              ⎪
John T. K. Hayward, John    ⎬
   J. Cruikshank, Jr., James ⎪
   Hayward, defendants.      ⎭

George A. Mahan, prosecuting attorney of Marion county, Mo., comes and informs the court that on the 31st day of January, 1880, at the city of Hannibal in Mason township, Marion county, Mo., defendants, John T. K. Hayward, John J. Cruikshank, Jr., and James Hayward, did then and there unlawfully, wilfully and maliciously manufacture, print, publish and have in their possession with intent then and there to circulate obscene, lewd and licentious pamphlets entitled, "The Case of C. O. Godfrey," a publication of an indecent and scandalous character, against the peace and dignity of the state.

And the said Geo. A. Mahan further informs the court that on or about the 31st day of January, 1880, at the city of Hannibal, in Mason township, Marion county, Mo., the said John T. K. Hayward, John J. Cruikshank, Jr., and James Hayward, did then and there unlawfully, wilfully and maliciously give away, distribute and circulate obscene, lewd and licentious pamphlets entitled, "The Case of C. O. Godfrey," a publication of an

indecent and scandalous character, against the peace and dignity of the state.

GEO. A. MAHAN,
*Prosecuting Attorney.*

Thomas H. Bacon, being sworn, says that the facts set forth in the above information are true, as therein contained, to the best of his information and belief.

THOMAS H. BACON.

Subscribed and sworn to before me on the 6th day of February, 1880.

N. DICK.

Recorder C. H., and *ex-officio* J. P. within the city of Hannibal, Mason township, Mo.

Filed February the 6th, 1880.

On change of venue had the cause was tried before Burr F. McPherson, a justice of the peace, resulting in a verdict of guilty against the defendant. Taken by appeal to the Hannibal court of common pleas the cause was again tried before the judge of that court, no jury being called, resulting in a similar finding and the defendant appealed here.

I. The information in this cause as already seen was verified by the oath of a private citizen. This is in terms permitted by section 1762, Revised Statutes, 1879, and in this case the form of verification accords with the form laid down in section 1764. But it will be seen that while section 1762, just referred to, requires that the information "be signed by the prosecuting attorney and be verified by his oath, or by the oath of some person competent to testify as a witness in the case, or be supported by the affidavit of such person, which shall be filed with the information," yet permits that the "verification by the prosecuting attorney may be upon information and belief." It thus becomes apparent that it is only where the verification is made by the prosecuting attorney that it can be based in fact and made in form "upon information and belief." This is an instance

where the maxim *expressio unius* applies ; for the legislature by singling out the prosecuting attorney and permitting him to verify the information in a particular way obviously intended that he alone should verify in that way. This view is borne out not only by resort to and application of the maxim cited, but also by the other portions of the section already quoted, showing in unmistakable and unequivocal terms that the verification when made by an unofficial person, whether by oath or affidavit, must be by "some person competent to testify as a witness in the case."

This view is also confirmed by section 1763, where the person who may make an affidavit which is to be the preparatory step in the prosecution, is defined as "any person who has knowledge of the commission of any misdemeanor." This view also finds support in section 2028, where an information filed with a justice of the peace, must be "verified by the oath or affidavit of a person competent to testify against the accused or by the prosecuting attorney." This view is also in harmony with the practice which prevails in England, where a prosecutor might, by making the proper basis, obtain a rule against an accused person to show cause why an information should not be filed against him for a misdemeanor. But in such case no rule would go unless the evidence were of such directness as would, uncontradicted, establish the offence beyond doubt. 1 Chit. Cr. L., 856, 857 ; *Rex v. Williamson*, 3 B. & Ald. 582 ; *Rex v. Bull*, 1 Wilson 93 ; *Rex v. Willett*, 6 T. R. 294 ; *Reg. v. Baldwin*, 8 A. and E. 168. Our legislature seems to have thrown the same safeguard around the citizens of this state and to have effectually prevented them from being prosecuted by information for a misdemeanor, where a private citizen is the mover of such prosecution, except where he has knowledge of the matters set forth in the information, is a competent witness to testify against the accused and verifies the information in a direct manner. For this reason the information should be held not verified as required by law.

II.   I will now consider the sufficiency of the information itself. It is evidently framed under section 1542, Revised Statutes, 1879, relative to obscene literature, its sale, circulation, publication, etc.   It will be observed that the information does not set out the obscene matter of the pamphlets, nor does it give any excuse for failing to do this; but the drawer of the information has been content to follow the general language of the statute.   In many cases it will do to charge the offence in the language of the statute, "to follow the language of the statute," as it is frequently said.   But this rule only applies where all the facts which constitute the offence are set forth in the statute.   *State v. Kesslering*, 12 Mo. 565; *State v. Davis*, 70 Mo. 467.   Shaw, C. J., in *Tulley v. Commonwealth*, 4 Met. 358, observes: "When the statute punishes an offence by its legal designation, without enumerating the acts which constitute it, then it is necessary to use the terms which technically charge the offence named at common law.   But we think this is not necessary when the statute describes the whole offence and the indictment charges the crime in the words of the statute."   Mr. Wharton, treating of this subject, says: "On the general principles of common law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far individuates the offence that the offender has proper notice, from the mere adoption of the statutory terms, what the offence he is to be tried for really is.   But in no other case is it sufficient to follow the words of the statute.   It is no more allowable under a statutory charge to put the defendant on trial without specification of the offence than it would be under a common law charge." Whart., Cr. Pl. and Prac., sec. 220; to the same effect see Heard on Crim. Pl. 161, 162, 163, 165, 166; *Stener v. State*, 17 Rep. 670; *State v. Gardner*, 28 Mo. 90; *State v. Rochforde*, 52 Mo. 199; *U. S. v. Carll*, 105 U. S. 611; *U. S. v. Cruikshank*, 92 U. S. 542; 1 Arch. Cr. Pr. and Pl., 88; 2 Hawk. P. C., ch. 25, sec. 111.

And Bret, L. J., in *Bradlaugh v. The Queen*, E. L. R., 3. Q. B. D. 607; S. C. 3 Am. Crim. Rep. 464, says: "Every pleading, civil or criminal, must contain allegations of the existence of all the facts necessary to support the charge or defence set up by such pleading. When the crime alleged in an indictment consists of words written or spoken, it seems to me that the words are the facts which constitute the crime, and for this reason the words must be set out." In that case the indictment charged that the defendants "unlawfully, wickedly, etc., did print, publish, sell and utter a certain indecent, lewd, filthy, and obscene libel, to-wit, a certain indecent, lewd, filthy, bawdy, and obscene book called 'Fruits of Philosophy,' thereby contaminating, violating and corrupting the morals as well of youth as of other liege subjects," etc. The case was tried before Cockburn, C. J., and Mellor, J., and the defendants, being convicted, moved in arrest of judgment on the ground that the libel ought to have been set out. This motion was denied, but upon the case being argued in error before Bramwell, Brett and Cotton, L. J., there was unanimous concurrence in reversing the decision of the queen's bench, and the authorities as well of England as of America were thoroughly examined and discussed and the conclusion reached just announced.

From that discussion, as well as from examination of the authorities, the only point of difference observable between the rulings in England and this country is, that in the former, the words of the obscene libel must be set out *in hæc verba;* in the latter, if the libel be too obscene to appear on the records of the court, the indictment should give such general description as decency permits, stating as an excuse the reason why the obscene matter is not spread at large upon the records, that the obscenity of the omitted matter is too great to admit of this being done. This excuse will be accepted in lieu of the matter omitted, otherwise the indictment will be held fatally defective. Whart. Cr. Pl. and Pr., sec. 177; *Com. v.*

*Tarbox*, 1 Cush. 66; *Com. v. Holmes*, 17 Mass. 336; *Com. v. De Jardin*, 126 Mass. 46; *State v. Brown*, 27 Vt. 619; *People v. Girardin*, 1 Mich. 90; 1 Bish. on Crim. Proc., secs. 496, 561; *McNair v. People*, 80 Ill. 441; Heard on Crim. Pl., 209. It will become obvious, therefore, that whether we apply to the case at bar the English or the American rule of criminal pleading, the information cannot be ruled otherwise than invalid. In the case of *Com. v. Tarbox, supra*, the indictment was framed under section 10, ch. 130, R. S. Mass., which now corresponds with section 15 p. 819, General Statutes, Massachusetts. A section virtually identical with section 1542, so far as concerns the point in hand, so that case is not only authority for the ruling just announced, but also for the assertion heretofore made that following the language of the statute is not always sufficient, besides furnishing a direct application and illustration of the rule where following the statutory language will not do in cases like the present.

The same observation may be made respecting *McNair v. People, supra*, where the prosecution was based on similar statutory provisions, and where, in addition thereto, there was an express statute providing that "an indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offence in the terms and language of the statute creating the offence, or so plainly that the nature of the offence may be easily understood by the jury." In Texas an indictment based upon a statutory provision respecting indecent and obscene publications, etc., charged that the defendant did "publish an indecent and obscene newspaper called '*John Donkey*' manifestly designed to corrupt the morals of the youth of said county," and the indictment was held insufficient, the court holding that "the composition or print should have been set out or such description given of it, that the court could judge of its character in reference to the alleged indecency and obscenity." *State v. Hanson*, 23

Tex. 233. But in that case no authorities are cited, and the point seems to have been but lightly considered. In Wisconsin, in an analagous case, it has been recently ruled that a complaint, based upon the statute respecting "abusive language calculated to provoke an assault," although in the language of the statute, was insufficient because of not setting forth the language used. *Stener v. State*, 17 Rep. 670. I strongly incline to adhere to the ruling made by the English judges in *Bradlaugh v. Regina, supra*, as being in conformity to reason, precedent in other cases, both civil and criminal, and more than all in conformity with the constitutional right of a party accused to be "informed of the nature and cause of the accusation" against him, a right possessed by an accused at common law, and which certainly has not undergone any change or suffered any diminution because of having been emphasized and embodied both in the federal and in our state constitutions.

Mr. Bishop, in his admirable treatise, says: "The doctrine of the courts is identical with that of reason, namely, that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted. This doctrine pervades the entire adjudged law of criminal procedure. It is made apparent to our understandings, not by a single case only, but by all the cases. Wherever we move in this department of our jurisprudence, we come in contact with it. We can no more escape from it than from the atmosphere which surrounds us." 1 Bishop Crim. Prac., sec. 81. And elsewhere the learned author observes: "The right of the accused person to have every element of his supposed crime—in other words every individual thing which the law has specified as constituting any part of the foundation for its punishment set down in allegation in the indictment, is secured in this country by constitutional guaranties." "The United States constitution provides as to crimes against the general government that 'in all criminal prosecutions the accused shall enjoy the

right * * * to be informed of the nature and cause of the accusation.' More or less nearly in these words are provisions in the constitutions of other states. But the 'nature and cause' of an accusation are not stated where there is no mention of the full act or series of acts for which the punishment is to be inflicted. * * * There can be neither indictment nor information except in writing, which to justify the whole punishment must specify the whole crime." "Wisely, therefore, the law requires the allegation to be full. As already shown, every fact which is an element in a *prima facie* case of guilt must be stated, otherwise there will be at least one thing which the accused person is entitled to know whereof he is not informed, and that he may be certain what each thing is, each must be charged expressly, and nothing left to intendment. All that is to be proved must be alleged." Ib. secs. 86, 88, 519. On this point Porter, J., in *Mears v. Commonwealth*, 2 Grant (Pa.) 385, expresses his views very happily, saying: "In the spirit of that principle which presumes innocence until guilt be established, we infer that what is not charged in an indictment does not exist, and it is the business of the pleader to exclude by proper averments, the conclusions to which the accused is thus entitled."

In the *Commonwealth v. Phillips*, 16 Pick. 211, Shaw, C. J., observed: " The salutary rule of the common law, that no one shall be held to answer to an indictment or information, unless the crime with which it is intended to charge him is expressed with reasonable precision, directness and fulness, that he may be fully prepared to meet and if he can to answer and repel it, is recognized and enforced, and extended to every mode in which a citizen can be called to answer to any charge or crime in this commonwealth, by the highest authority known to the laws, namely, an express provision in the Bill of Rights, article 12. It declares that no subject shall be held to answer for any crime or offence, until the same is fully and plainly, substantially and formally, described to him.

The reasonable degree of certainty required in an indictment is so familiar that it requires no authorities to support or illustrate it. 1 Chitty's Criminal Law, 170. Whilst it is important to the administration of public justice and the reasonable execution of the laws, that indulgence should not be too readily yielded to mere technical niceties and subtleties, it is also important that every man accused of crime should have a reasonable opportunity to know what the charge is; that he may not be called to meet evidence at the trial that he could not have anticipated from the charge; that the court may know what judgment to render; and that the party tried and either acquitted or convicted may be enabled by reference to the record to shield himself from any future prosecution for the same offence."

Archibold says; "The indictment must state all the facts and circumstances comprised in the definition of the offence, by the rule of the common law or statute on which the indictment is founded. And these must be stated with clearness and certainty; otherwise the indictment will be bad. The principal rule as to the certainty required in the indictment, may, I think, be correctly laid down thus: That where the definition of an offence, whether by a rule of common law or by statute, includes generic terms (as it necessarily must) it is not sufficient that the indictment should charge the offence in the same generic terms as in the definition, but it must state the species—it must descend to particulars." 1 Arch. Crim. Prac. and Plead., 88. "Certainty may be defined to be a clear and distinct setting down of facts, so that they may be understood both by the party who is to answer the matters stated against him, the counsel who are to argue them, the jury who are to decide upon their existence, and the court who are the judges of the law arising out of them." *Rex. v. Griffith*, 3 Mod. 201; Lawes' Pl., 53. In *United States v. Cruikshank*, 92 U. S. 542, an indictment had been drawn which "followed the language of the statute," and it was held bad, Waite,

C. J., stating: "In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right to be informed of the nature and cause of the accusation. Amend. VI. In *United States v. Mills*, 7 Pet. 142, this was construed to mean that the indictment must set forth the offence with clearness and all necessary certainty to apprise the accused of the crime with which he stands charged; and in *United States v. Cook*, 17 Wall. 174, that every ingredient. of which the offence is composed, must be accurately and clearly alleged. * * * For this facts are to be stated, not conclusions of law alone." Similar rulings have been made elsewhere respecting the necessity of certainty in the charges contained in indictments based upon statutes when viewed in the light of similiar constitutional provisions. *Landringham v. State*, 49 Ind. 186; *McLaughlin v. State*, 45 Id. 338; *State v. Learned*, 47 Me. 426; *Murphy v. State*, 24 Miss. 590.

And acts of the legislature whose purpose was to make a general allegation as to crimes charged in indictments sufficient were held unconstitutional because of impinging upon the constitutional right of the accused to know of what he is alleged to be guilty and to meet the exact charge against him. I have quoted thus extensively from the authorities and text-books, not as doubting the common learning which they assert, but merely as a basis for the following remarks: The information in this case does not come up to the standard already announced. If the legislature, the law-making power, cannot dispense with the necessity of essential averments in an indictment or information, can the courts go further in this direction than the legislature, and by judicial legislation dispense with the substantial averments of the ingredients which constitute crime? The plea, the excuse offered for this judge-made law, is the preservation of the "chastity of the records." But can this excuse override a great fundamental right secured by the organic law? But this plea, this excuse, is purely

imaginary and does not apply in any other case, either civil or criminal. The reported cases show in actions for slander and libel the foulest obscenities, and this inflexible requirement that the words themselves, reeking it may be with obscenity, be set forth. Starkie on Slander, 362; 2 Greenl. Evid., sec. 410; 3 Greenl. Evid., sec. 166. Why should the rule of exclusion obtain in the single case of an obscene libel and not in any other? Why not in the case of a defamatory libel? But the constitutional rights of an accused must not be sacrificed on the fanciful idea of preserving the chastity of the records. His right remains unaffected by the nature of his crime. The constitutional guarantee extends over every criminal offence, or it extends over none.

To illustrate: Suppose a person is arrested on such an information as is here presented, and on being confronted by the prosecuting attorney the prisoner says: "I have been arrested, I know not for what. I desire to prepare for trial; I insist upon my constitutional right; I demand the nature and cause of the accusation against me." What would that official reply? What could he reply but this: "Wait till you hear the evidence." Or, suppose further: One is arrested upon a *capias* issued on one of these *blank-cartridge* indictments. He pleads guilty. What sentence shall the court impose? Shall witnesses be called to eke out the defects of that indictment, to specify what it fails to specify? Shall it be amended by parol? If, after this, the defendant moves in arrest, how is he to show error on the face of the record? If *excuses* answer in the place of *charges*, plainly there is no error of record. Is it not one of the tests of the insufficiency of an indictment that every allegation may be taken to be true, and yet the defendant be guilty of no offence? *Com. v. Harris*, 13 Allen 539; *Com. v. Collins*, 2 Cush. 558; *Turner's Case*, 9 Q. B. 80; *Reg. v. Harris*, 1 Denison C. C. 466; *Reg. v. Rowlands*, 2 Denison C. C. 377. If such a nondescript indictment were to come before us, simply on error, could we hold it good?

Lord Mansfield said, in *Rex v. Wheatly*, 2 Burr. 1125, "in a criminal charge there is no latitude of intention to include anything more than is charged; the charge must be explicit enough to support itself." In *Com. v. Learned, supra*, Kent. J., when speaking of an indictment, such as I have been discussing, where the legislature had authorized general allegations of a crime to be sufficient, said: "By the process and proceedings of the common law, the accused has the right to know the charge in the whole form and substance against him, to contest it, and if not proved to the satisfaction of a jury, to demand an acquittal." *Saco v. Wentworth*, 37 Maine 172. Will any one maintain that the legislature might dispense with a *written* accusation, or enact that any written charge, however vague or indefinite in its terms, should be sufficient? * * * It would present the absurd record of a case where a person is *sentenced to punishment for matters which the record itself shows are no offence against the law*." In *Bradlaugh's Case, supra*, Cotton, L. J., said: "Does the principle that the record must be kept pure justify the absence of what would otherwise be a necessary averment in the indictment on the ground that it is gross and impure? In my opinion it does not, and for this reason the duty of the court is to administer justice, either as between party and party, or as between the crown and those who are accused; and for the purpose of doing so it ought not to consider its records as defiled by the introduction upon them of any matter which is necessary in order to enable the court to do justice according to the rules laid down for its guidance; a defendant has a right to say that he shall have fair notice in order that he may not be prejudiced in defending himself against proceedings, whether civil or criminal, and, therefore, in my opinion, the principle on which those American cases are decided does not avail in this case."

For these reasons, I am of opinion that the rule of the common law announced in the case just cited

should be followed as being in accord with a long line of common law precedents and authorities; in accord, too, with common and constitutional right, and that, therefore, there being no valid information against the defendant, the judgment should be reversed and he discharged, and it is so ordered. All concur; Norton, J., in the result. Hough, C. J., absent.