The State v. Clay.

———————

## THE STATE v. CLAY, *Plaintiff in Error.*

1. **Criminal Law:** FALSE PRETENSES: R. S. 1879, SEC. 1561: INDICTMENT. An indictment under Revised Statutes, 1879, section 1561, for obtaining property by false pretenses, which does not follow the form prescribed by said section, is bad.

2. ——: ——: ——: ——. Such indictment, which fails to allege that defendant obtained the "property" of the parties (husband and wife), but, instead, copies into the body of the indictment an option of purchase and power of attorney, which recites that the parties own certain real estate in Kansas in the right of the wife (describing it), which option and power of attorney, it charges, defendant obtained from them by means of a trick, fraud, etc., which are alleged to be "a valuable thing," does not follow the statutory form, and is defective.

3. ——: ——: ——: ——. Substituting the words "valuable thing" for "property" is not a compliance with the form prescribed by the statute.

The State v. Clay.

4. ———: ———: ———: ———. An indictment under said section, which alleges that defendant, with intent to cheat and defraud, obtained "a certain valuable thing," to-wit, "a certain option and power of attorney," which it sets out, and concludes with a separate and disconnected paragraph beginning: "All and singular by means, and by use, of a trick, fraud and deception," etc., is bad.

5. ———: ———: ———: ———: PRESUMPTION. Such indictment, which alleges that defendant obtained "a valuable thing," an instrument which it sets out, being an option contract for the sale of land of a married woman in Kansas, with power of attorney, is bad on its face, since, in the absence of any showing to the contrary, it will be presumed that the common law obtains in that state, under which such contract is a nullity, and of no value, and the power of attorney equally invalid.

6. ———: ———: ———: ———: ———. At common law, a married woman could not execute a letter of attorney with, or without, her husband.

7. ———: ———: ———: ———. The omission of an allegation in the indictment as to the power of a married woman to execute the option contract, or power of attorney, as to lands in the state of Kansas, could not be supplied by intendment or by evidence *aliunde*.

8. ———: ———: ———: ———. The indictment in this case was bad under Revised Statutes, 1879, section 1335, since an indictment under that section must be similar in substance and substantial requirements to one at common law.

*Error to Newton Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED.

*W. Cloud* and *Adiel Sherwood* for plaintiff in error.

The indictment is bad. (1) It does not state the specific property obtained, nor allege that the option had a value. *State v. Crooker*, 95 Mo. 349; *State v. Rockford*, 52 Mo. 199. (2) It does not state the true name of the person defrauded. The evidence shows that the property belonged to Eliza Splitlog, and not to her and Mathias Splitlog. *State v. Horn*, 93 Mo. 190; *State v.*

*McChesney*, 90 Mo. 120. (3) No venue is laid, and there is no allegation that any money or property was obtained in Newton county, Missouri, where the indictment was found. *State v. Shaeffer*, 89 Mo. 279. (4) There is no allegation that either money or property was obtained, or that the agreement was executed and delivered, or that title passed thereby. R. S. 1879, sec. 1561; *State v. Fancher*, 71 Mo. 463; *State v. Shaeffer*, 89 Mo. 271. (5) Neither the purport of the writing nor the written instrument itself is set out. *State v. Pullens*, 81 Mo. 387. (6) Even if the option was executed and delivered, it ceased to belong to Eliza and Mathias Splitlog, and defendant could not defraud them by obtaining it. *State v. Dowd*, 95 Mo. 167. (7) It does not allege that the persons from whom the option was obtained relied upon the representations made, nor that the representations were false, and defendant knew them to be so. *State v. Evers*, 49 Mo. 542; *State v. Saunders*, 63 Mo. 482; *State v. Bonnell*, 46 Mo. 395; *State v. Connor*, 11 N. E. 454; *Pattee v. State*, 10 N. E. 421; *State v. Delay*, 5 S. W 607. (8) Neither the common law nor statutory form is followed. Either the common law or statutory form must be followed. *State v. McChesney*, 90 Mo. 120. In this case, nothing was left but the common law. The statutory form could not be followed here—the words, "a valuable thing," do not appear in the latter part .of the section wherein the form of indictment is prescribed (R. S. 1879, sec. 1561), and the defect cannot be supplied by intendment. *Ex parte Donaldson*, 44 Mo. 149. (9) The evidence shows that the land was the fee-simple separate property of a married woman. There is no proof as to what provisions are made by the law of Kansas for the conveyance of such property, hence the presumption that it is the same as the law of the forum. The instrument pleaded does not show a compliance with the law of Missouri. It is not "jointly made and

acknowledged and certified." Hence is a void instrument, and could not be "a valuable thing." R. S. 1879; sec. 670; *Bartlett v. O'Donoghue*, 72 Mo. 563; *Hoskinson v. Adkins*, 77 Mo. 540.

*John M. Wood*, Attorney General, *R. F. Clark*, Prosecuting Attorney, *J. W. Brunk* and *Wm. Rush, Jr.*, for the State.

(1) The indictment is good. It meets the objections stated by this court in the case of *State v. Crooker*, 95 Mo. 389, in this, that it sets up in the body of the indictment the valuable thing charged to have been obtained by defendant Clay, so that defendant was fully informed as to what the valuable thing was which he is charged with obtaining. (2) The indictment charges that the option and power of attorney was obtained from Eliza and Mathias Splitlog; that it was a "valuable thing," and that it was obtained by means and use, etc. R. S. 1879, sec. 1561; *State v. Porter*, 75 Mo. 171. (3) The venue is laid in the margin of the indictment, the first statement in the indictment is "State of Missouri, Newton county," and this is a sufficient laying of venue for the purpose of locating all of the allegations in the body of the indictment, and it is not necessary to allege a venue in the body of the indictment. R. S. 1879, sec. 1813; *State v. Dawson*, 90 Mo. 149; *State v. Keel*, 54 Mo. 182. Section 1561, Revised Statutes, 1879, does not require that the indictment must allege that either money or property was obtained. It does charge that defendant Clay obtained "a valuable thing," and this court has sustained this very form of indictment. The indictment sets up the whole body of the option and power of attorney (the valuable thing obtained) which shows that it was obtained. *State v. Porter*, *supra*. (4) The indictment in case at bar does not allege that the option and power of attorney was executed and delivered by the victims of Clay, but charges that he obtained it by

The State v. Clay.

means, and by use, of a trick, etc. . Hence the case of *State v. Dowd*, 95 Mo. 163, does not apply to the case at bar. (5) After reading the testimony of the Splitlogs and Amos, it is readily seen that this is just the kind of a case that was intended by the legislature to be covered by section 1561, Revised Statutes, 1879. It is a purely statutory offense. If defendant had been indicted under section 1335, Revised Statutes, 1879, the punishment would have been wholly inadequate for the offense. *State v. Porter*, *supra*, and other authorities cited. (6) The statutory form, 1561, *supra*, has been followed substantially, and has been repeatedly held good by this court. *State v. Sarony*, 95 Mo. 349; *State v. Beaucleigh*, 92 Mo. 490; *State v. Bayne*, 88 Mo. 604, and cases cited.

SHERWOOD, J.—The defendant was tried under the following indictment :

"STATE OF MISSOURI, ⎫
"County of Newton, ⎬ ss.

"In the circuit court of Newton county, Missouri, May term, 1889.

"The grand jurors of the state of Missouri duly summoned from the body of the county of Newton, being duly empaneled, charged and sworn as such at the May term of the circuit court to inquire within and for Newton county, Missouri, A. D. 1889, upon their oaths present that heretofore on or about the eleventh day of April, 1887, one Moses W. Clay did unlawfully, feloniously obtain from Eliza and Mathias Splitlog with intent to cheat and defraud them, the said Eliza Splitlog and Mathias Splitlog, a certain valuable thing, to-wit, a certain option and power of attorney in words and figures substantially in words and figures, to-wit :

"'This agreement made and entered into on this twelfth day of March, 1887, by and between Mrs. Eliza Splitlog and her husband, Mathias Splitlog, temporarily of the county of McDonald, state of Missouri, parties

of the first part, and Moses W. Clay, of Newton county, state of Missouri, party of the second part, witnesseth: The said parties of the first part, who formerly resided at Wyandotte, Kansas, own in the right of said Mrs. Eliza Splitlog certain real estate and land situated in Wyandotte county, Kansas, bounded by lines commencing ten (10) poles north of the northeast corner of the southeast quarter of section sixteen (16), township eleven (11), range twenty-five (25), and running thence eighty (80) poles, thence south one hundred and forty (140) poles, thence east eighty (80) poles, thence north one hundred and forty (140) poles, to the place of beginning, containing seventy-one (71) acres, more or less, excepting, however, the right of way of the Union Pacific Railway Company across the same.

" 'That the said parties of the first part desire to sell and convey said property to the said party of the second part, or his assigns, for the price and sum of eight hundred dollars per acre.

" 'That, for and in consideration of one dollar, paid by the said party of the second part to the parties of the first part, who acknowledge the receipt thereof, the said parties of the first part hereby contract, agree and covenant to give and do hereby give and convey unto the said party of the second part the right, license, privilege and option for himself and assigns to buy and become the purchaser or purchasers and vendee or vendees of the said property at any time within one year from said date at and for the said price and sum of eight hundred dollars per acre for the said tract or parcel of land and estate or any part thereof, which price by the election of the said party of the second part or his assigns, or to avail himself or themselves of the said license or option or any part thereof, shall be paid and delivered to the said Mrs. Eliza Splitlog, wife of the said Mathias Splitlog, and the said option may be devisable and severable and of different dates, and relate to different portions

of said property at the discretion of the said party of the aforesaid second part. That, for the purpose of expediting the sale and conveyance on one hand and purchase on the other, the said parties of the first part do make, constitute and appoint said party of the second part their true and lawful attorney, agent and attorney in fact for them, and in their name and stead to sell and confirm unto any assignee or assigns of this contract the option hereby contracted in and all of the aforesaid property for the price and sum of eight hundred dollars per acre, and in their names and as their act and deed to sign, execute, acknowledge and deliver such deed or deeds or any part thereof with such clauses, agreements, covenants of warranty as the said party of the second part shall see fit, hereby ratify and confirm all of such deeds, and covenanting with them will, at the request and cost of the vendee, make, execute and deliver all such further acts, deeds, conveyances, assurances for the further and more practical granting and confirming of or any part of said premises to the said purchaser or purchasers and grantees as may or shall be desired and requested of the parties of the first part.

"'In testimony whereof the said parties of these presents have hereunto set their hands and seals the date first above written.

his<br>
"'Mathias  X  Splitlog,<br>
mark<br>
her<br>
"'Eliza  X  Splitlog.'"<br>
mark

"All and singular by means and by use of a trick, fraud and deception and by false and fraudulent representations, statements and pretenses contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Missouri.

"R. F. Clark,

"Prosecuting Attorney of Newton county, Mo."

The trial resulted in the defendant's being convicted, and his punishment assessed at nine years' imprisonment in the penitentiary. He has appealed to this court.

I. The indictment before us is bottomed on section 1561, Revised Statutes, 1879, as follows: ". Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any other person or persons any money, property or valuable thing whatever, by means or by use of any trick or deception, or false and fraudulent representation or statement or pretense, or by any other means, or instrument or device, commonly called the 'confidence game,' or by means or by use of any false or bogus check, or by any other written or printed or engraved instrument, or spurious coin, or metal, shall be deemed guilty of a felony, and, upon conviction, be punished by imprisonment in the penitentiary for a term not less than two years. In every indictment under this section, it shall be deemed and held a sufficient description of the offense to charge that the accused did, on ———, unlawfully and feloniously obtain, or attempt to obtain (as the case may be), from A. B. (here insert the name of the person defrauded) his or her money or property by means and by use of a cheat, or fraud, or trick, or deception, or false and fraudulent representation or statement, or false pretense, or confidence game, or false and bogus check, or instrument, or coin or metal, as the case may be, contrary to the form of the statutes," etc.

It only requires a very cursory examination of the statute, and a very cursory comparison of it with the indictment, upon which the trial in this cause was had, to determine that that indictment does not conform to the section on which it is drawn in several particulars: (1) It fails to copy the prescribed statutory form. (2) It does not, in compliance with that form, charge that the defendant obtained the "*property*" of Eliza Splitlog and Mathias Splitlog.

The fact that the instrument or option copied into the body of the indictment recites that "the said parties of the first part who formerly resided at Wyandotte, Kansas, own in the right of said Mrs. Eliza Splitlog certain real estate and land situated in Wyandotte county, Kansas" (describing it) does not supply the lack of the charge in the indictment that the defendant obtained the "*property*" of Eliza and Mathias Splitlog. (3) It does not comply with the statutory form by substituting the words "*valuable thing*" for the word "*property*." (4) It does not comply with the statutory form in that it does not charge that the property of Eliza and Mathias Splitlog was obtained "by means and by use of a trick, fraud" etc., because the *addendum* at the concluding portion of the indictment commencing with the words, "All and singular," etc., has neither real nor apparent connection with what has gone before. And, unless the statutory form is followed, the indictment is bad under the former rulings of this court in the following cases: *State v. McChesney*, 90 Mo. 120; *State v. Horn*, 93 Mo. 190; *State v. Dowd*, 95 Mo. 163.

II. Again, the option contract set out in the indictment, as "*a certain valuable thing*," recites that the parties of the first part, husband and wife, own certain real estate in the state of Kansas in the right of Mrs. Eliza Splitlog, etc. At common law the contract of a *feme covert* as to her real estate was wholly void. The only way whereby her land could be conveyed was for instance by levying a fine, etc., in which she joined with her husband and was privily examined (2 Black. Com. 351, 355) in a manner similar to her acknowledgment of a deed in modern times.

But in the indictment here there is no mention made of any acknowledgment or of any similar ceremony having occurred as to the instrument in question. In the absence of any showing to the contrary it will be presumed that the common law prevails in a sister state.

*Meyer v. McCabe,* 73 Mo. 236; *Benne v. Schnecko, ante,* p. 250.

But, apart from any question of acknowledgment, the agreement of the wife as to land held *simply in her own right* is not enforceable at common law, whether in making it she joins with her husband or not. On this point Bishop remarks: "Though the statutes authorize *femes covert* to convey their lands, and this authority ought to be construed to comprehend everything properly belonging to the contract of actual sale, yet it does not qualify them to enter into a valid executory agreement to sell; for a prior agreement to sell is not an essential part of the actual selling. * * * No executory agreement to convey, formal or informal, with or without the concurrence and joinder of the husband, will bind the wife. Not even a court of equity will give such an agreement effect, by decreeing its fulfillment against her." Bishop or Mar. Women, sec. 601. To the like effect, see *Shroyer v. Nickell,* 55 Mo. 264 and cases cited; 7 Cent. Law Journal, 182, and cases cited; *Atkison v. Henry,* 80 Mo. 151, and cases cited.

In *Purcell v. Goshorn,* 17 Ohio, 105, AVERY, J., observed: "No precedent, as it is supposed, can be found of a decree against a *feme covert* to convey lands held by descent, or by the usual conveyance, upon the ground of her having agreed to convey or her having executed a defective conveyance, whether upon a full consideration paid or not."

Now, if a married woman could not be compelled to specifically perform her written agreement to convey her real estate to which she holds but a fee-simple title, it logically follows that her option contract, even though acknowledged by herself and husband, would possess no validity, and therefore could in no sense be regarded as "*a valuable thing,*" even if those words could be held as the legal equivalent of the word "property." So that upon the face of the indictment it appears that the

alleged "*valuable thing*" is an instrument incapable of enforcement and therefore a nullity into whatever hands it might fall. If this be true of the written agreement to convey, then, of course, the power of attorney which is contained in the same instrument has nothing upon which it can operate and is, therefore, equally invalid.

But the power of attorney is *prima facie* invalid for another consideration. At common law a married woman could not execute a letter of attorney; such an instrument was unknown to that system of jurisprudence. Bac. Ab., Attorney, B.; *Hardenburgh v. Lakin*, 47 N. Y. 109; *Snyder v. Sponable*, 1 Hill, 567; *Holladay v. Daily*, 19 Wal. 606. Apart from statutes specially authorizing a *feme covert* to convey her lands by joining her husband in the execution of a power of attorney, she is powerless, either with or without her husband, to execute such an instrument. Bishop, Mar. Women, sec. 602. Indeed, the authorities show that unless authorized by statute and unless pursuing the precise means pointed out by the statute, a married woman's contract (saying nothing about her separate estate), cannot affect in any manner her lands either at law or in equity; but are simply void. *Martin v. Dwelly*, 6 Wend. 9, and cases cited; Story's Eq. Jurisprudence, 1391.

Indulging, then, the presumption before mentioned of the prevalence of the common-law rules in the state of Kansas, in the absence of any allegation in the indictment to the contrary, it must be held that the power of attorney, also, possesses no validity for the additional reason mentioned. Of course, any lack of necessary allegation in the indictment on the points discussed could be supplied neither by intendment nor by evidence *aliunde*.

III. The indictment being thus fatally defective, considered with reference to the section upon which it is based, is of course equally or more defective, considered with reference to section 1335, Revised Statutes,

1879, the general section in relation to obtaining the signature of any person to any written instrument or any money, personal property, right in action or other valuable thing with intent to cheat and defraud another, etc.   An indictment under this section just cited is similar in its substance and substantial requisites to one at common law.   And unless the indictment be good either at common law or under the statutory form, it is invalid.   *State v. McChesney*, 90 Mo. 120.   That the present indictment is insufficient under section 1335, *supra*, is readily seen by an examination of the following authorities:   *State v. Evers*, 49 Mo. 542; *State v. Saunders*, 63 Mo. 482; *State v. Bonnell*, 46 Mo. 395.

IV.   Moreover, after much consideration we have determined that the form given in section 1561 can no longer be upheld as constitutional.   That form, as it stands, violates in all essential particulars section 22 of article 11 of our constitution, commonly called the Bill of Rights, in that it fails to inform the accused of " the nature and cause of the accusation."   This, an indictment drawn according to the form laid down in section 1561 signally fails to do.

An indictment under our statutory criminal procedure means just what it did at common law.   The legislature may change it in form ; but cannot change the substance of its material averments.   *State v. Meyers*, 99 Mo. 107.   We, therefore, feel constrained to rule that *State v. Fancher*, 71 Mo. 460, and cases subsequently conforming thereto, shall no longer be followed. The authority of that case was greatly shaken by that of *State v. Crooker*, ¡95 Mo. 389, wherein it was held, contrary to the *letter* of section 1561, that in order to the validity of an indictment drawn on that statute it was indispensable that the *specific property* obtained should be stated.   Of course it is no more necessary specifically to describe the *property* obtained than to designate the *false pretense* by which that property was

obtained. And the *State v. Fancher, supra,* was virtually overruled by that of *State v. Hayward,* 83 Mo. 299.

In that case, when discussing the constitutional right aforesaid of the accused, we quoted with approval from an eminent author, where he observes: "The doctrine of the courts is identical with that of reason, namely, that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted. This doctrine pervades the entire adjudged law of criminal procedure. It is made apparent to our understandings, not by a single case only, but by all the cases. Wherever we move in this department of our jurisprudence we come in contact with it. We can no more escape from it than from the atmosphere which surrounds us." 1 Bishop, Crim. Proc., sec. 81. And elsewhere the learned author observes: "The right of the accused person to have every element of his supposed crime—in other words, every individual thing which the law has specified as constituting any part of the foundation for its punishment set down in allegation in the indictment—is secured in this country by constitutional guaranties." "The United States constitution provides as to crimes against the general government that in all criminal prosecutions the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation, * * *. More or less nearly in these words are provisions in the constitutions of other states. But the 'nature and cause' of an accusation are not stated where there is no mention of the full act or series of acts for which the punishment is to be inflicted. * * * There can be neither indictment nor information except in writing, which to justify the whole punishment must specify the whole crime." "Wisely, therefore, the law requires the allegation to be full. As already shown, every fact which is an element in a *prima facie* case of

guilt must be stated, otherwise there will be at least one thing which the accused person is entitled to know whereof he is not informed, and, that he may be certain what each thing is, each must be charged expressly, and nothing left to intendment. All that is to be proved must be alleged." Bish. Crim. Proc., secs. 86, 88, 519.

Controlled by these considerations and pursuing the same course pursued by us in the following cases : *State v. Hayward, supra ; State v. Crooker*, 95 Mo. 389 ; *State v. Horn*, 93 Mo. 190 ; *State v. McChesney*, 90 Mo. 120, we shall reverse the judgment and discharge the defendant.

All concur, except that they do not hold section 1561 unconstitutional; but BRACE, J., concurs on all points.