State v. Krueger.

---

THE STATE v. KRUEGER, *Appellant.*

Division Two, May 12, 1896.

1. **Criminal Practice**: VIOLATION OF ELECTION LAWS: STATUTE: INDICTMENT.    Revised Statutes, 1889, section 3748, providing that "if any judge or clerk of an election or any other person" shall willfully and knowingly receive and place in the ballot box any ballot not legally voted by a qualified voter, etc., refers only to judges and clerks of elections and persons *ejusdem generis;* and an indictment founded on such statute which fails to aver that defendant was such a judge or clerk, or acting in a similar capacity, is insufficient.

State v. Krueger.

2. ———: ———: ———: ———. Such indictment is insufficient unless it particularizes one or more of the ballots alleged to have been fraudulently voted.

3. ———: ———: ———: ———. An indictment in the language of the statute is sufficient only where all the facts which constitute the offense are set forth in the statute.

*Appeal from Lafayette Criminal Court.*—HON. JOHN E. RYLAND, Judge.

REVERSED.

*John Welborn, I. B. Kimbrell,* and *J. J. Williams* for appellant.

(1) The statute only applies to judges and clerks of election and persons *ejusdem generis. State v. Schuchman,* 33 S. W. Rep. See, also, Endlich on Interpretation of statutes, secs. 85 and 358. (2) The indictment does not inform the defendant of the nature and cause of the accusation against him and is defective in substance. "It is no more allowable under a statutory charge to put the defendant on trial without specification of the offense than it would be under a common law charge. Wharton, Crim. Pl. and Prac., sec. 220; *State v. Hayward,* 83 Mo. 304; 1 Bishop, Cr. Pr., secs. 86 and 88. (3) Where the definition of an offense, whether by a rule of common law or by statute, includes generic terms (as it necessarily must), it is not sufficient that the indictment should charge the offense in the same generic terms as in the definition, but it must state the species—it must descend to particulars. 1 Arch. Cr. Pr. and Pl., 88. "In mentioning things connected with the substance of the offense, the indictment should employ the word which denotes the species, not the generic term. For example, 'property' is too general, so is 'cattle.'" 1 Bish. Cr. Pr. and

Prac., sec. 568.    *State v. Crooker*, 95 Mo. 389; *State v. Rockford*, 52 Mo. 199.

*Teasdale, Ingraham & Cowherd* also for appellant.

(1) The indictment is drawn under section 3748, Revised Statutes.    This statute is highly penal and must be strictly construed.    *State v. Bryant*, 90 Mo. 534; *Fusz v. Spaunhorst*, 67 Mo. 256; *State ex rel. v. Smith*, 114 Mo. 180; *State v. McCance*, 110 Mo. 398; *Dudley v. Tel. Co.*, 54 Mo. App. 394; Sutherland on Statutory Construction, sec. 347; Sedgwick on Statutory Construction, p. 267; Potter's Dwarris on Construction of Statutes, p. 247.    (2) The legislature alone can make the act a crime, and if through inadvertence or carelessness they fail to intelligibly define the crime the court can not aid the wording of the act.    See authorities above cited.    Sutherland on Statutory Construction, sec. 431;    *Coe v. Lawrence*, 1 E. and B. 516; *Green v. Wood*, 2 Q. B. 185; *U. S. v. Wiltberger*, 5 Wheat. 76; *State v. Partlow*, 90 N. C. 550; *Schooner Enterprise*, 1 Paine Rep. 33; *State v. Finch*, 37 Minn. 434; *State v. Lovell*, 23 Iowa, 304; *Remington v. State*, 1 Ore. 281.

*John W. Beebe* and *W. S. Cowherd* also for appellant.

*R. F. Walker*, attorney general, *W. T. Jamison*, prosecuting attorney, *G. A. Neal* and *R. E. Ball* for the state.

(1) The indictment is drawn in the language of the statute and is sufficient. *Seate v. Johnson*, 93 Mo. 317. It avers the means determined on by the conspirators and the plan adopted by them was executed.    *State v. Ulrice*, 3 Dillon, 532.    (2)    Section 3748, Revised

Statutes, 1889, is not under the rule of *ejusdem generis*,
limited in its effect to judges and clerks.   See *U. S. v.
Briggs*, 9 How. 354; *Eubanks v. State*, 5 Mo. 450;
*Parsons v. Wayne*, 37 Mich. 289.  The doctrine of *ejusdem
generis* is a rule of construction to aid in ascertaining
the intent of the legislature and not a rule to be
employed for the purpose of abrogating and nullifying
the intent.  *State v. Williams*, 35 Mo. App. 541;
*Kansas City v. Vanquest*, 36 Mo. App. 584; *St. Joseph
v. Elliott*, 47 Mo. App. 418; *State, etc., v. Corkins*, 124 ·
Mo. 56.

BURGESS, J.—On change of venue from the crimi-
nal court of Jackson county to the criminal court of
Lafayette county, the defendant was tried and con-
victed, and his punishment fixed at a fine of $100,
under an indictment which, leaving off the formal
parts, reads as follows:

"The grand jurors for the state of Missouri, sum-
moned from the body of the county of Jackson, being
duly selected, impaneled, sworn, and charged to inquire
of and concerning crimes and offenses within and for
the body of said county and state, and true present-
ment make, on their oath, present and charge: That
on the first Tuesday after the first Monday in Novem-
ber, in the year of our Lord, 1894, it being the sixth
day of said month, in the year aforesaid, a general
election was holden under the constitution and laws of
the state of Missouri, in and for the county of Jackson,
aforesaid, in several townships and election and voting
precincts of the said county, and in the city of Kansas
City, the said city of Kansas City then and there being
within the said county aforesaid, for the choice of and
for the purpose of electing state, county, and township
officers, as provided by law, the said election then and
there being a regular and general election for the pur-
pose aforesaid; that the said city of Kansas City then

and there had a population of over one hundred thousand inhabitants, and whose population then and there entitled it to become a city of the first class, as provided by law, and a registration of voters thereof of said city, prior to said election, was then and there required for and had by the laws in such cases provided.

"That precinct 5, of the second ward, was then and there one of the election and voting precincts of the said city, county, and state aforesaid.

"And the grand jurors aforesaid, on their oath aforesaid, do further present and charge, that one Charles S. Owsley, John May, Owen W. Krueger, George J. Pearse, John Moran, Harry G. Bristow, and Ralph L. Krueger, alias Dick Krueger, late of said county and state, on the sixth day of November, 1894, in the city, county and state aforesaid, did then and there unlawfully, willfully, illegally, fraudulently, corruptly, knowingly, and feloniously change the true and lawful result of said election at said election and voting precinct aforesaid, to wit: by unlawfully combining and confederating together before the day of said election, to wit: on the twenty-fifth day of August, A. D. 1893, for the purpose of procuring an illegal, unlawful, and fraudulent registration of voters in the precinct aforesaid, and by procuring a false, fictitious, and fraudulent list of names to be registered on the registration books in said city and purporting to be legal and qualified voters in the precinct aforesaid, and by unlawfully combining and confederating together prior to said election aforesaid, to wit: on the twenty-fifth day of August, 1894, for the purpose of procuring corrupt and unfit persons to act as and for the judges and clerks of said election at said precinct aforesaid, who should do the will and bidding and become the agents of and for the said Charles S. Owsley, John May,

Owen W. Krueger, George J. Pearse, John Moran, Harry G. Bristow, and Ralph L. Krueger, alias Dick Krueger, on the said twenty-fifth day of August, 1894, and who should at the instance and direction of the persons aforesaid, unlawfully, fraudulently, illegally, corruptly, and feloniously place ballots and papers purporting to be ballots in the ballot boxes at said precinct, accredited to the false, fraudulent, and fictitious names on the registration books aforesaid, and represented as votes cast by said false, fraudulent, and fictitious names, and by causing and having the said unfit and corrupt persons aforesaid, to make a wrong count of the ballots cast at said precinct of said election, and by making a false return thereof.

"And the grand jurors aforesaid, on their oath aforesaid, do further present and charge that the said Charles S. Owsley, John May, Owen W. Krueger, George J. Pearse, John Moran, Harry G. Bristow, and Ralph L. Krueger, alias Dick Krueger, in pursuance of the unlawful combination and confederation aforesaid, did on the twenty-fifth day of August, A. D. 1893, procure and obtain the placing on the registration books of said city for said precinct, a large number of false, fictitious, and fraudulent names, the same purporting to be legal and qualified voters, and did obtain and procure the said names to be placed on the poll books at said election precinct, and did obtain and secure the appointment of corrupt and unfit persons to act as judges and clerks of election at said election and voting precincts, to wit: Thomas L. Tuck, Henry A. C. Jeffre, Benj. D. Ridenour, Arthur O. Clark, George O. O'Dell, Everett E. Paddock, Issac Dreyfoss, and Joseph Pierce, on the twenty-fifth day of October, A. D. 1894, and did by means of said unfit and corrupt persons, cause to be placed in the ballot box at said election and voting precinct a large number of ballots

and papers purporting to be ballots which had not then and there been voted by qualified voters at said election and voting precinct, to wit: two hundred thereof, and did procure a wrong count of the ballots at said precinct, and a false return thereof, by means of the persons aforesaid, the same not being in pursuance of law or the order of the court, with the intent then and there to unlawfully, willfully, illegally, fraudulently, knowingly, corruptly, and feloniously change the true and unlawful result of said election at said election and voting precinct, against the peace and dignity of the state.''

From the judgment defendant appealed.

The case is before this court on the record proper, and the only question for adjudication is the sufficiency of the indictment.

The indictment is under section 3748, Revised Statutes, 1889, which reads as follows:

''If any judge or clerk of any election authorized by law, or any other person, shall willfully and knowingly receive and place in the ballot box, or aid, assist, or assent to the placing in any ballot box, any ballot, or paper purporting to be a ballot, which is not legally voted by a qualified voter at such election, or shall illegally, willfully and fraudulently abstract, or aid in or assent to the abstraction, from any ballot box any legal ballot for the purpose of changing the lawful result of any election, or shall in any manner willfully influence or attempt to influence any person to do any of the acts aforesaid, or to omit to do any lawful act required of him in relation to any election, or shall in any manner illegally, willfully, and fraudulently change or attempt to change, or induce any other person to change, the true and lawful result of any election, by any act to be done either before, at the time of, or after such election, by a wrong count of the ballots, by

State v. Krueger.

changing the true returns or making a false return thereof, or by changing the figures of the returns after they are made up, either before or after the returns are duly made, or in any other manner except in pursu- ance of law or the order of a court, every person offend- ing against any of the provisions of this section shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or by imprison- ment in the county jail not less than three months, and by a fine not less than one hundred dollars, or by both such fine and imprisonment, and shall also be forever prohibited from voting at any election and from holding any office or position of trust or emolument under authority of this state, or any department thereof, or of any county, city, or town therein, either by election or appointment, or as clerk or employe."

Defendant's first contention is that the statute quoted only applies to judges and clerks of election, and persons *ejusdem generis*, and as the indictment does not aver that he was judge or clerk of the election, or that he was acting in a similar capacity, it is invalid.

The right of defendants to raise the question for the first time in this court is not questioned nor can there be any doubt in regard thereto.

In construing statutes, where general words fol- low particular ones, as in the case at bar, the rule is as announced in *Lyndon v. Standbridge*, 2 H. & N. 51 (Broom's Legal Maxims [6 Ed.], 625), as follows: "Where a particular class is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class." This language was quoted with approval by SHERWOOD, J., in *State v. Schuchmann,* 133 Mo. 111, in which it was held, after an able and exhaustive review of many authorities on the subject, that the words "other build-

ings'' as used in Revised Statutes, 1889, section 3526, making it burglary for any person to break and enter any ''shop, store, booth, tent, warehouse, or other building,'' etc., means a building of like kind with those enumerated, and does not, therefore, embrace a chicken house building.

It would seem unnecessary to do more than refer to that decision in order to show that the indictment under consideration is bad, for the reason that it does not charge that defendant was either judge or clerk of the election, or *ejusdem generis;* however, a limited number of decisions of this court announcing the same doctrine will be referred to.

*St. Louis v. Laughlin,* 49 Mo. 559, was a proceeding by the city against the defendant, a practicing lawyer, to recover a license tax imposed upon the profession of a lawyer under the charter of said city, which provided that the mayor and city council should have power to license, ''auctioneers, grocers, merchants, retailers, hotels, * * * hackney carriages, omnibuses, carts, drays, and other vehicles, and all other business, trades, avocations or professions whatever.'' And it was held that the city had no power to impose a license tax on a lawyer, the profession of law not being *ejusdem generis,* and was not embraced within the meaning of the charter; thus announcing the familiar rule of construction, that where general words follow particular ones they are to be construed as applicable only to persons or things of the same general character or class. See, also, *St. Louis, etc., Ass'n v. Delano,* 108 Mo. 219; *State v. Bryant,* 90 Mo. 534.

The specific words of the statute are ''if any judge or clerk of any election authorized by law, or any other person,'' and must be so construed as to mean persons legally connected with such election, as officer or otherwise. When the statute says that if any such person

"shall willfully and knowingly receive and place in the ballot box, or aid, assist or assent to the placing in any ballot box any ballot, or paper purporting to be a ballot, which is not. legally voted by a qualified voter, * * * or * * * omit to do any lawful act required of him in relation to any election," it clearly means some person authorized to receive such ballots, and who has some duty to perform, and has no reference to a person in no way connected with conducting such election.

But it is contended·that the act is intended to prevent fraud of all kinds at popular elections, and, to accomplish that end, to include all persons within its provisions.

We can only arrive at the intention of the legislature by the language used in the act, and in construing it we must be governed by the rules of construction adopted by this court and others in construing statutes of a similar character, one of which is, that all criminal statutes are to be strictly construed, as against the state, and liberally construed in favor of the defendant; that nothing is to be presumed against him, but every doubt must be resolved in his favor, and when this is done, there can be no question in our minds as to the invalidity of the indictment in this case.

It is also contended that the indictment is insufficient for the further reason that it does not inform the defendant of the nature and cause of the accusation against him, and does not individuate the offense, and does not describe or identify any one ballot charged to have been improperly cast or counted.

By section 22, article 2, of the constitution of Missouri, a person accused of crime is entitled "to demand the nature and cause of the accusation," against him, and unless the indictment in this case conforms

to this mandate of the bill of rights, it must be held bad for that reason also.

This right is guaranteed to the accused in order that he may prepare to defend himself against the accusation of his accusers. Does the indictment in this case comply with the right guaranteed to defendant by the constitution?

It will be observed that it does not describe the ballots, relied upon by the state as being fraudulent, with any particularity or certainty of description, either by their numbers, or the names of the persons by whom they purported to have been voted, nor how or in what manner or in whose favor a wrong count was made, or false return was made; nor in what respect the count was incorrect, or the return false, nor does it aver that all or any of such matters were unknown to the grand jurors, all of which were necessary if known to the grand jury, and if not it should have been so averred in the indictment.

The grand jury could have easily ascertained from the poll books, and from other sources, the name, registration number, and voting number corresponding with each ballot alleged to have been unlawfully deposited in the ballot boxes, and the indictment should have at least individuated some of such ballots, and thus made the charge specific and definite.

It is not sufficient, we think, to allege in a general way that an indefinite number of the ballots cast were fraudulent, without describing with reasonable accuracy any one of them. If the indictment was with respect to a single fraudulent ballot it would be insufficient unless it described that ballot by its number, and the name of the voter by whom it is claimed to have been cast, and the number of the ballots cast does not change the rule. There is no difference in principle in the two cases. If necessary to describe the ballot

in the one case it is in the other. Nor is it sufficient to allege that a false return or count was made, without stating in what manner, and in whose favor.

How the defendant could have prepared to defend himself against charges so general in their nature we are unable to see.

In *State v. Stowe*, 132 Mo. 199, there is quoted with approval the following from 1 Chitty on Criminal Law, 169, to wit: "The first general rule respecting indictments is, that they should be framed with sufficient certainty. 'For this purpose the charge must contain a certain description of the crime of which the defendant is accused, and a statement of the facts by which it is constituted, so as to identify the accusation, lest the grand jury should find a bill for one offense, and the defendant be put upon his trial in chief for another without any authority?'"

"The statutory indictment must specify on its face the criminal nature and degree of the offense, which are conclusions of law from the facts, and also the particular facts and circumstances which render the defendant guilty of that offense." 1 Bishop, Cr. Proc., sec. 625. See, also, *State v. Miller*, 132 Mo. 297; *State v. Terry*, 109 Mo. 601.

How could the defendant know from this indictment the particular charges upon which the state intended to rely, or the evidence necessary to exculpate himself from charges so general in their character, under which the evidence on the part of the state must have assumed a wide and almost unlimited range. As was said in *State v. Moore*, 3 Dutcher (N. J.), 109, "a charge so general and so indefinite is inconsistent with the well settled rules of criminal pleading, and must of necessity embarrass, if not fatally prejudice, the defendant in making his defense." See, also, *Quinn v. State*, 35 Ind. 485.

The charges against the defendant should have been of such certainty, and so specific, as to be a bar to another indictment against him for the same offense, but in this the indictment is fatally defective.

It is however argued that as the indictment is in the language of the statute it is sufficient. "But this rule only applies where all the facts which constitute the offense are set forth in the statute." *State v. Hayward*, 83 Mo. 304; *State v. Davis*, 70 Mo. 467; *State v. Kesslering*, 12 Mo. 565.

In *Tully v. Commonwealth*, 4 Met. (Mass.) 358, it is said: "When the statute punishes an offense, by its legal designation, without enumerating the acts which constitute it, then it is necessary to use the terms which technically charge the offense named, at common law. * * * But we think this is not necessary, when the statute describes the whole offense, and the indictment charges the crime in the words of the statute."

Mr. Wharton, treating of the same subject, says: "On the general principles of common law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far individuates the offense that the offender has proper notice, from the mere adoption of the statutory terms, what the offense he is to be tried for really is. But in no other case is it sufficient to follow the words of the statute. It is no more allowable, under a statutory charge, to put the defendant upon trial without specification of the offense, than it would be under a common law charge." Cr. Pl. &. Pr. [9 Ed.], sec. 220. *State v. Hayward*, *supra*, and authorities cited.

Our conclusion is that the indictment is fatally defective in that it does not set forth with sufficient particularity the acts with which defendant is attempted to be charged as being criminal under the statute, and does not inform him of their character, so as to enable him

to prepare his defense. The judgment is reversed and defendant discharged. All of this division concur.

