## THE STATE v. THIERAUF, Appellant.

### Division Two, March 11, 1902.

1. **Patent Medicine:** CASTORIA: PUBLIC PROPERTY. Since the expiration in 1865 of the patent under which "Castoria" was first manufactured, that word has become public property, and no trade-mark exists in it any longer, and no person is debarred from using it.

2. ——: IMITATION OF FALSE FORMULA. A criminal imitation can not be predicated on the use by the alleged imitator of a formula which recites as the ingredients of his medical compound the same ingredients recited in a false statement of the complainant's formula.

3. ——: CRIMINAL PLEADING: IMITATION IN PART: LABELS. A cardinal principle in criminal pleading is that it must contain an allegation of every fact which is essential to the punishment to be inflicted. If defendant is charged with selling a patent medicine which is in part an imitation of another well-known medicine, there must be a specific allegation as to what part has been imitated. A setting out in the information of many-worded labels attached to the bottles containing the two medicines, where such labels contain names and formulae of medicines which have become public property, falls far short of that particularity which is required in stating a criminal charge, and is no such pleading as will sustain a verdict of guilty.

4. ——: ——: ——: IN STATUTORY LANGUAGE. Where the statute denounces various distinct acts as criminal, in the disjunctive, the pleading must specify what part of the statute the accused has violated and in what way. The defendant's constitutional right "to demand the nature and cause of the accusation against him," requires this. A mere general accusation in the general language of the statute is not sufficient.

5. ———: ———: COPYING EXHIBITS. Good pleading makes it necessary to charge every essential of an exhibit. Merely copying it into the information or indictment is not such pleading.

Appeal from St. Louis Court of Criminal Correction.—*Hon. Willis H. Clark,* Judge.

REVERSED.

*Thomas P. Bashaw* for appellant.

The information is bad pleading. Using merely the language of the statute, it alleges that the label designated such compound "in part by words and general design," etc., and "was in part the same to the eye," etc., but does not aver in what part or in what respect; and that defendant was not the first to use said words, "wholly or in part, and said general design;" thus failing to point out any words or designs alleged to be in imitation of complainant's label. Again, it simply alleges that defendant "with intent to defraud did," etc., without naming the person, firm or corporation to be defrauded; nor is it averred that the intent was to defraud some person or persons to affiant unknown. Defendant had a right to know whether he was charged with an intent to defraud the Centaur Company or the public. In the one case the evidence and the proof to be collected to meet the charge would be essentially different from that required in the other. For this reason a general averment of an intent to defraud is not sufficient. The intent to defraud is the gist of the offense. Without it there is no case, under the section named.

*Edward C. Crow,* Attorney-General, and *Jerry M. Jeffries* for the State.

(1) It is not necessary that every section of an act should be constitutional in order that the entire act may be

constitutional.   The section attacked by the appellant is one under which he is not prosecuted, and is clearly separable from the remainder of the act, and the remainder of the act when separated from this section would constitute a sufficient law to cover the offense.   In such a case, it is immaterial whether such section is or is not constitutional.   State ex rel. v. Ins. Co., 152 Mo. 48.   Sections 10368 and 10369, Revised Statutes 1899, as well as other sections of this amendatory act are practically the same as sections 8573 and 8574, Revised Statutes 1889; and sections 8573 and 8574, Revised Statutes 1889, are the same as sections 7546 and 7547, Revised Statutes 1879.   There is very little change in the law and if the amended Act of 1893 should fall by reason of its unconstitutionality because of a defective passage through both houses or irregularity in its enactment, the conviction would still be legal under the statute this amended act purports to repeal. An unconstitutional act does not repeal a prior valid act. State ex rel. v. Wardell, 153 Mo. 319.   When an act is to displace an old law and substitute a new one which is unconstitutional, the repealing clause falls and will not affect the old act in any manner.   Especially would this be true if the unconstitutionality of the new law was solely upon the ground of irregularity in the manner in which it was enacted.   State v. Thompson, 138 Mo. 95.   The act has been expressly held not to be unconstitutional on the ground that it is class legislation.   This was so held under the law as it existed previous to the amendatory Act of 1893, but the amended law seems only to reach out and take in labels and persons and business that before were not included.   The defendant would be liable and is liable under the law as it stood previous to this amendment.   State v. Bishop, 128 Mo. 337; State v. Burlinsheimer, 62 Mo. App. 168.   All statutes are presumed to be constitutional.   State ex rel. v. Aloe, 152 Mo. 466; State v. Thompson, 144 Mo. 314.   It has been held that the title to an act is no part of the act itself.   State ex rel. v. Saline County,

51 Mo. 350. (2) The appellant questions the sufficiency of the information in this cause upon the theory that the information should set out that the trade-mark had been adopted according to the requirements of the first section of this chapter of our laws, which is section 10365, Revised Statutes 1899. It seems to us that this section of the statute can not be interpreted as mandatory, but that it must be held merely as directory. A person can pursue this manner of adopting a trade-mark. The statute must be interpreted that the owner of the trade-mark may file the same and not that he must file it in order that the public may secure the protection of this law. Hall & Robinson v. Railroad, 80 Mo. App. 463.

GANTT, J.—The second count of the information upon which alone the defendant was tried and convicted, was as follows:

"And the assistant prosecuting attorney aforesaid, now here in court, on behalf of the State of Missouri, further information makes as follows:

"That Benjamin Chieraun, on the twenty-fifth day of September, 1900, in the city of St. Louis and State of Missouri, with intent to defraud did unlawfully and knowingly sell and expose and offer for sale, certain bottles containing a compound and preparation, generally known as and called 'Castoria,' with a certain label brand, wrapper and imprint affixed to and upon them which then and there designated such compound and preparation in part by words and by general design, and which said label, brand and wrapper and imprint was as follows:

State v. Thierauf.

ARTHUR'S

C A S T O R I A

A vegetable preparation for assimilating the food and regulating the stomach and bowels of

INFANTS and CHILDREN.

Promotes Digestion, Cheerfulness and Rest. Contains neither Opium, Morphine nor Mineral. NOT NARCOTIC.

————....————

Receipe of old Dr. SAMUEL PITCHER.

Pumpkin Seed,
Alx Senna
Rochelle Salts
Anise Seed
Peppermint
Bt Carbonate Soda
Worm Seed
Clarified Sugar
Wintergreen Flavor.

————....————

A perfect remedy for Constipation, Sour Stomach, Diarrhoea, Worms, Convulsions, Feverishness and LOSS OF SLEEP.

————....————

Fac Simile Signature of
ALPH. ARTHUR
N E W          Y O R K

SEE DIRECTIONS
ON LABEL.

Price, 35 Cents.

"CASTORIA The old reliable remedy, aids digestion, prevents sour stomach and gives rest. Does not contain Opium and is harmless.

FOR INFANTS AND CHILDREN

ACCEPT NONE — — — Without the official Signature, ALPH. ARTHUR, On Every Bottle.'

X ★ X ★ X ★ X

Accordance with Formula by ARTHUR CHEMICAL CO. Manufacturing Department. NEW YORK

"And which said label, brand wrapper and imprint was, as he, the said Chieraun, then and there well knew, in part the same to the eye as the words and general design then used and for a long time prior thereto used by a body corporate, to-wit, the Centaur Company corporation under and by virtue of the laws of the State of New York for designating the compound and preparation known as and called 'Castoria,' and manufactured and prepared by said Centaur Company, a corporation as aforesaid, and which said label, brand and wrapper and imprint so used as aforesaid by the Centaur Company, a corporation as aforesaid, was in words and figures as follows, to-wit:

State v. Thierauf.

900 DROPS

CASTORIA

A Vegetable Preparation for Assimilating the Food and Regulating the Stomach and Bowels of

INFANTS AND CHILDREN.

Promotes Digestion, Cheerfulness and Rest. Contains neither Opium, Morphine nor Mineral. NOT NARCOTIC.

————....————

Receipe of old Dr. SAMUEL PITCHER.

Pumpkin Seed,
Alx Senna
Rochelle Salts
Anise Seed
Peppermint
Bt. Carbonate Soda
Worm Seed
Clarified Sugar
Wintergreen Flavor.

————....————

A perfect Remedy for Constipation, Sour Stomach, Diarrhoea, Worms, Convulsions, Feverishness and LOSS OF SLEEP.

————....————

Fac-simile Signature of

CHAS. H. FLETCHER

New York.

At 6 months old
35 Doses—35 Cents.

"THE fac-simile signature of CHAS. H. FLETCHER, is on every wrapper.

CASTORIA, huma preparacao Vegetal para a assimilacao da Comida, e para regular o Estomago, e as Entranhas das CRIANCAS e MENINOS, Promove a Di gestas, o Bom Humor, e o Socego, Nao Contem Opio, Nem Morphina. Recipe do Velho Dr. Samuel Pitcher, Hum Remedio Perfeito para Constipacao, Estomago Acido, Diarrhea, Lombrigas, Convulsoes, Indisposicao, Febricitante e PERCA DO SONO.
Chas. H. Fletcher, NEW YORK.

CASTORIA, Preparation Vegetale pour aider aux ENFANTS a s'assimiler les aliments et leur regler l'Estomac et les Instestins On peutl'e, mployer, sans crainte, pour les PETITS ENFANTS, Active la Digestion et procure l'Aisance et le Repos Ne contient ni Opium ni Morphine. Recette de l'Ancien Docteur Samuel Pitcher, C'est un Remede Infaillible contre la Constipation, les Aigreurs d'Estomac, la Diarrhee, les Vers, les Convulsions, la Fievre et les insomnies.
Chas. H. Fletcher, NEW YORK.

CASTORIA. Ein vegetabilisches Praparat zur Verbindung der Nahrung und Regulhrung des Magens und der Gedaerme von Sanglingen und Kindern; es befordert Verdauung, Munterfeit und Ruhe; es enthalt weder Opium noch Morphium. Recept des alten Doctors Samuel Pitcher. Ein vollfommenes Heilmittel fur Verstopsung, Sauern Magen, Durchfall, Wurmer, Krampfe, Feiberhastigfeit und Schlasosigfeit.
CHAS. H. Fletcher, NEW YORK.'

"He the said Benjamin Chieraun, as he well knew, then and there not having been the first to employ and use the aforesaid words or general design to designate, wholly or in part, the aforesaid or any other compound, preparation, goods, wares or merchandise, and as he, the said Benjamin Chieraun, then and there well knew that said words wholly or in part, and the said design as aforesaid, were then and there used by the said Centaur Company, a corporation as aforesaid, for designating its compound and preparation as aforesaid, and for a long time prior thereto had been so used by it, and for a long time before said word or words or general design as aforesaid were used by the said Benjamin Chieraun for any compound or preparation as aforesaid; and that a large lot quantity of the aforesaid spurious compound and preparation called 'Castoria,' in bottles with the aforesaid counterfeiting labels and wrappers thereon and a large lot of said imitation labels and wrappers and plates and dies for making the same are now in possession of the said Chieraun, on premises No. 109 South Second street, in said city of St. Louis, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State.

"RICH M. JOHNSON,

"Asst. Pros. Attorney St. Louis Court of Criminal Correction.

"State of Missouri, } ss.
City of St. Louis,

"Chas. H. Camp being duly sworn, upon his oath, says that the facts stated in the above information are true.

"CHAS. H. CAMP.

"Sworn to and subscribed before me this —— day of September, 1900.

ALFRED J. WAGENMANN,

"Clerk of the St. Louis Court of Criminal Correction.
"(Seal.)                    By B. L. NIEDUR, Deputy Clerk."

Defendant suggested his true name and moved to quash for the following reasons:

"Comes now the said defendant, *John B. Thierauf,* who is prosecuted herein under the name of *Benjamin Chieraun,* and here now in open court, on this the twelfth day of March, 1901, by his attorney moves the court to quash the information against him in this cause on the ground that said information is insufficient in law, in that it does not charge the defendant with a violation of any law of the State, and in that it is not charged in said information that the label which defendant is charged to have imitated has ever been filed in the office of the Secretary of State; and in that it is not alleged that said Secretary of State has issued his certificate showing such filing and recording; and in that the act of the General Assembly of this State under which said information is drawn, to-wit, the Act approved March 20, 1893, entitled 'Trade-Marks,' is repugnant and contrary to the provisions of the Constitution of this State relating to searches and search warrants and undertakes to repeal all the laws of this State enacted in accordance with the requirements of said section of the Constitution; and in that said act is contrary to the provisions of section 23 of article 2 of the Constitution of this State relating to testimony on civil and criminal cases; and in that this Court hath not jurisdiction to hear and determine this cause."

Which motion was overruled and exceptions saved.

A jury was waived and the cause submitted to the court without a jury, and resulted in a finding of guilty and the assessment of a fine of $100.

Defendant appeals.

At the time of the commencement of this prosecution, the defendant was a chemist in the employ of the Palestine Drug Company of St. Louis, in whose place of business he was arrested.

The Centaur Company is a corporation under the laws of

the State of New York, engaged in manufacturing medicines, one of which is known as "Castoria," a compound which was first concocted in 1870 by one Dr. Pitcher, in Boston, who obtained a patent for it. Finding his preparation would not keep he added to his formula, but did not patent the improvement.

From Pitcher the Centaur Company deduces its right to make and vend Castoria. It has no exclusive privilege to the trade-name "Castoria," but bases this prosecution on the fact that more than twenty years ago it adopted a trade-label with certain words arranged in a particular manner, which became a trade-mark by which its goods are known, and that defendant in violation of section 10368, Revised Statutes 1899, with intent to defraud did unlawfully and knowingly sell and offer for sale *certain bottles* containing a compound known as "Castoria," with a certain label, brand or wrapper and imprint affixed to and upon them which designated such compound in part by words and general design, which as he well knew was in part the same to the eye as the words and general design then used and for a long time prior thereto had been used by the Centaur Company for designating its compound known as "Castoria" in its said trade-label or trade-mark, contrary to the statute.

In September, 1900, one Camp, who was employed by the Centaur Company to discover counterfeits of its trade-mark, called at the office of the Palestine Drug Company, No. 109 Second street, St. Louis, Missouri, and asked for the president and was informed he was not in, but was referred to defendant as an employee of the company, who would wait on him. Camp represented himself as a druggist from Cincinnati, Ohio, looking for something that he could use in a cut-rate drugstore and was invited by defendant to look over their stock on the third floor. He discovered there a lot of Castoria bottled, some already wrapped and set in a box; others partly wrapped. The boxes were of the same size used by the Centaur Company.

He testified that defendant said it was a close imitation of the genuine of the Centaur Castoria. He could not remember whether he said the original or genuine Castoria. Camp purchased a dozen bottles from defendant at the time, which bottles were offered in evidence. He paid the young lady in the office and took a receipt. He also purchased some quinine tablets at the same time. When the warrant was read to defendant, Bick, the proprietor, was present and said "You don't want to arrest this young fellow; he is a mere employee here. I am the proprietor." Camp testified further that these labels he found there were similar in appearance and design to the Centaur labels. He also testified he found a can of mixture, which he tasted and he "took it to be the stuff they called 'Castoria,' which they were putting in the bottles."

This witness testified that the Castoria manufactured and sold by the Centaur Company was not the preparation made and patented by Dr. Pitcher the patent to which had expired.

A certificate by the Secretary of State of Missouri of the filing of the Centaur trade-mark on April 10, 1899, was read over the objection and exception of defendant.

Also a certificate from Secretary of State of New York, which was excepted to.

Among other things the defendant called two druggists, and having shown them a genuine bottle, each of Arthur's "Castoria," and Fletcher's "Castoria," they were asked to state whether in their opinion Arthur's Castoria could be sold to the trade as Fletcher's? To this the State objected and it was excluded over the objection and exception of defendant.

At the close of the evidence defendant asked a declaration of law that under the law and the evidence, the verdict must be for the defendant, which the court refused, and thereupon found defendant guilty.

I. The second count of the information in this case attempts to charge a violation of section 10369, Revised Statutes

1899,which provides that any person or persons "who shall knowingly sell or expose or offer for sale any such case, box, web, package or bottle, with any such label, brand, stamp, wrapper, engraving, imprint or mark...which shall designate such goods, wares, merchandise, compound or preparation, either wholly or in part by a word or words, or by sound to the ear, as the word or words or the general design which shall be wholly or in part the same to the eye, or in sound to the ear, as the word or words or the general design used by any person or persons, association or union of workingmen, or body corporate or politic for designing any goods, wares, merchandise, compound or preparation, manufactured or prepared by or for some other person or persons, association or union of workingmen, or body corporate or politic...provided such person or persons... so selling or offering for sale any such case, box, web, package, or bottle, shall not have been the first to employ or use such word or words or general design to designate, wholly or in part, any goods, wares, merchandise, compound or preparation," shall be deemed guilty of a misdemeanor and punished as therein specified.

Conceding there was evidence that defendant sold or offered for sale the Castoria, we are brought to the main proposition, did the evidence of the State establish the allegation of the information that defendant knowingly and unlawfully offered for sale a preparation known as Castoria with a certain label or imprint thereon which he knew was in part the same to the eye as the words and general design then and for a long time prior thereto used by the Centaur Company for designing and designating the compound, made by it and known as Castoria, by the introduction in evidence of the two labels set out in the information. The imitation is charged to be only "in part." In what respect the label on the Arthur Castoria counterfeited or imitated the Fletcher Castoria there is no specific allegation. This is a criminal charge, and nothing is left to intendment. Certainly the court is not to

go through all of the words used in these two labels to deter-
mine what particular words in the Arthur label fall within
the prohibited imitation, when it is averred to be *an imita-
tion in part only.* By the consensus of all the courts since
the expiration, in 1885, of the patent under which "Castoria"
was first manufactured, that word has become public prop-
erty, and no trade-mark exists in it any longer, and no person
is debarred from using it. [Centaur Co. v. Hinsfurter, 28
C. C. A. 581; Ibid v. Ibid, 84 Fed. Rep. 955; Singer Mfg.
Co. v. June Mfg. Co., 163 U. S. 169.] The statute clearly
was never intended to denounce as criminal, the use of lan-
guage and words which are free to all men.

And it is plain according to the evidence of Camp that
as the Centaur Company does not manufacture its Castoria
according to Pitcher's formula, which appears in both the
labels set out in the information, no criminal imitation by
defendant of Fletcher's Castoria can be predicated on the use
by defendant of that formula. Having used a false state-
ment as to the ingredients entering into its compound during
the life of its patent it can not now be heard to complain that
this formula has, by the expiration of its patent, become pub-
lic property. [Mfg. Co. v. Mfg. Co., 163 U. S. 169; Centaur
Co. v. Marshall, 92 Fed. Rep. 605.] The significance of these
observations becomes apparent when we come to test the suffi-
ciency of the information.

It is a cardinal principle in criminal pleading that it
must contain an allegation of every fact which is essential
to the punishment to be inflicted. [1 Bish. Crim. Proc., sec.
81; State v. Hayward, 83 Mo. 299.] In view, then, of the
fact that upon the face of this information it appears that
*only a part* of the label in the judgment of the pleader is an
imitation of the Centaur Company's label, it at once becomes
essential to know what that part is. Is it the word "Castoria,"
or "the Dr. Pitcher formula," or is it some other catch-word?

If the State relies upon the word "Castoria," or the

Pitcher formula, which by the expiration of the patent have fallen in the public domain, which any manufacturer may use, then no offense was committed, but if upon some other words, then they should be alleged, so that the accused may be advised what he is to meet. It must be stated so that the court and the defendant may know what the defendant is to meet, and that an issue may be framed.

But it is insisted that the information is in the language of the act and that is sufficient. No doubt, in many cases when a statute describes the whole offense which it defines, an indictment or information in the language of the statute is sufficient as has often been decided by this court. [State v. Dewitt, 152 Mo. 84.] And ordinarily, in charging a statutory offense, the words of the statute must be used so as to apprise the defendant of the specific crime with which he is charged. [State v. Mills, 146 Mo. 195.] But when a statute denounces various distinct acts as criminal in the disjunctive as this act does, then it is the constitutional right of the defendant "to demand the nature and cause of the accusation against him."

We are referred to State v. Bishop, 128 Mo. 385, to sustain this information, but a reference to that information will show that in that case the pleader particularly described the whole label of the Cigarmakers' International Union of America and the device was an unmistakable forgery and counterfeit of the union label and was so charged and described, but in this case the pleader avers that the wrapper on Arthur's Castoria *in part* was the same to the eye as the label used by the Centaur Company.

Having conceded that the Arthur label was only in part like the Centaur, he leaves it to be determined what part of the one is an imitation of the other. As already said, this falls far short of that particularity which is required in stating a criminal charge.

In the brief on the motion for rehearing it is urged that

in copying the two labels the most satisfactory method of indicating the similarity between the two had been adopted, but in the practice even in civil cases in this State it has always been necessary to charge every essential of an exhibit and not merely copy it into a pleading. We are still of the opinion entertained at first, that the information is wholly defective and insufficient to sustain a conviction under the statute.

We were misled in our original opinion by the statement of defendant's counsel that the prosecution was under section 10368, and it was apparently conceded by the State's brief.

Inasmuch, however, as the matter in which the information was adjudged insufficient is practically the same in each section, the same conclusion must follow, and accordingly the judgment is reversed and the motion for rehearing denied, and defendant discharged.

*Sherwood, P. J.,* and *Burgess, J.,* concur.