# STATE OF MISSOURI, Respondent, v. FREDERICK NIESMAN, Appellant.

**St. Louis Court of Appeals, May 12, 1903.**

1. **Criminal Law:** COUNTERFEIT UNION LABEL: GENUINE LABEL PASTED IN INDICTMENT: JEOFAILS. Revised Statutes 1899, section 2535, provides that a judgment on an indictment shall not be in any manner affected for any defect which does not tend to prejudice the substantial rights of the defendant on the merits: *Held*, on a prosecution for selling cigars from boxes bearing a counterfeit union label, that the pasting of a genuine union label itself in the information. instead of setting it forth in the writing according to its tenor, if a defect, was cured after judgment.

2. ———: ———: NO VARIANCE. A copy of a label to be used on boxes containing union-made cigars, which was presented to the Secretary of State for record, contained a space at the end of the label, "for autograph signature of president;" and, on a prosecution for selling cigars from boxes bearing a counterfeit union label, the information contained a genuine label, the same as the one filed, save that it bore an autograph signature: *Held.* that there was no variance, the signature of the president not being a part of the device itself.

Appeal from St. Louis Criminal Court.—*Hon.* . *lis H. Clark,* Judge.

AFFIRMED.

*C. H. Krum* for appellant.

(1) The information does not advise defendant of the nature and cause of the accusation. against him. There is no allegation in the amended information describing in any manner, shape or form any label of any kind, but simply a printed label pasted to the information and alleged to be genuine. This is bad pleading even in a civil case. State v. Thierauf, 167 Mo.

429. (2) Pasting a fifty-cent postal currency note to an indictment is insufficient. U. S. v. Fisler, 4 Biss. 59. (3) There is no description in the indictment of any forged, imitation or counterfeit label whatever, nor allegation of fact showing in what manner or way it was a counterfeit—nor was its tenor or effect pleaded. This is absolutely necessary to a correct information. 5 Encyclopedia Pleading and Practice, page 286, sec. 2, and cases there cited.

*S. S. Bass* and *Charles P. Williams* for respondent.

(1) This information is redundantly full, if we strike out as surplusage the pasted label. Com. v. Norton, 16 Pa. Super. Ct. 423. (2) That the objection to the pasted label comes too late after verdict, see: Rex v. Harris, 7 C. & P. 429; Rex v. Warshaner, 1 Moody C. C. 466; State v. Williams, 32 Minn. 537. (3) The precise point as to pasting in has been ruled on in this State. State v. Armstrong, 106 Mo. 414. (4) The analogy of forgery and counterfeiting should not be applied to prosecutions of this character. The information is bottomed on the case of State v. Bishop, 128 Mo. 429. (5) The point is covered by statute in this State. R. S. 1899, secs. 2528, 2529, 2530.

BLAND, P. J.—The appeal is from a conviction on the following information (omitting caption and signature):

"Richard M. Johnson, assistant prosecuting attorney of the St. Louis Court of Criminal Correction, now here in court, on behalf of the State of Missouri, amended information makes as follows:

"That Frederick Niesman, doing business under the firm name of Niesman Cigar Co. in the city of St. Louis, on or about the sixteenth day of November, 1901, did unlawfully, willfully, fraudulently, and knowingly keep for sale, vend and sell to one S. A. Scolari, certain

goods, wares, merchandise, to-wit: cigars the exact quantity or number thereof being to this informant unknown; that the said cigars then and there sold as aforesaid were then and there in boxes such as are commonly used for the placing of and packing therein cigars intended for sale; affixed to and upon the outside of the said boxes, then and there containing the cigars sold by the defendant as aforesaid, and in connection with which said boxes there was then and there at the time of the sale aforesaid a forged, imitation and counterfeit label and trade-mark of the Cigar Maker's International Union of America, a voluntary association and union of workingmen, members whereof are now and have for some time past been engaged in the making, manufacturing, preparing and selling of cigars in and at the city of St. Louis, and the State of Missouri; that the forged, imitation and counterfeit label, and trademark of the said Cigar Makers' International Union of America then and there upon and affixed to and in connection with the boxes containing cigars as aforesaid and at the time they were sold by the defendant as aforesaid was then and there a forged imitation and counterfeit of the following genuine label and trade-mark of the said Cigar Makers' International Union of America as the defendant then and there at the time well knew;

Issued by Authority of the Cigar Makers' International Union of America.

**CIGAR MAKERS' INTERNATIONAL UNION OF AMERICA. 1854.**

**Union-made Cigars.**

*This Certifies,* That the Cigars contained in this box have been made by a FIRST-CLASS WORKMAN, a MEMBER OF THE CIGAR MAKERS' INTERNATIONAL UNION of America, an organization devoted to the advancement of the MORAL, MATERIAL and INTELLECTUAL WELFARE OF THE CRAFT. Therefore we commend these Cigars to all smokers throughout the world. All infringements upon this label will be punished according to law.

LOCAL

STAMP

ALLIED PRINTING TRADES COUNCIL UNION LABEL CHICAGO, ILL.

*G. W. Perkins,* President, *C. M. I. U. of America.*

[Sept. 1880.]

that the said forged imitation and counterfeit of the genuine label and trade-mark of the said Cigar Makers' International Union of America upon and in connction with the boxes containing cigars as aforesaid and then and there sold by said Frederick Niesmann as aforesaid was then and there intended to represent and make it appear that the said goods, wares and merchandise, to-wit:

"The said cigars contained in the said boxes sold by said Frederick Niesmann as aforesaid as the genuine goods, preparation, make, wares, merchandise, to-wit; cigars prepared, made and manufactured by the association and union of workingmen, to-wit: the said Cigar Makers' International Union of America and the members thereof, whereas in truth and in fact the said cigars contained in the boxes as aforesaid and unlawfully and fraudulently sold by said Frederick Niesmann as aforesaid, were not made, prepared or manufactured by the said Cigar Makers' International Union of America, or any member or members of the said Cigar Makers' International Union of America, all of which, as well as the further fact that the label and alleged trademark affixed and attached and upon the said boxes containing the cigars sold as aforesaid was an imitation and counterfeit of the genuine label and trade-mark of the and adopted by the said Cigar Makers' International Union of America, said Frederick Niesmann then and there at the time he sold the cigars as aforesaid well knew.

"That said Cigar Makers' International Union of America, desiring to adopt said label as their trademark in order to designate, make known and distinguish the goods, wares and merchandise, to-wit: the cigars made and manufactured and prepared by the members of said association and union of workingmen did duly write out a description of such label describing the same accurately and had the same duly signed and acknowledged in accordance with the statutes in said cases made

and provided, and on the twenty-fifth day of April, 1894, filed said description for record in the office of the Secretary of State by leaving two copies, counterparts and fac similes of said label and trade-mark with the Secretary of the State of Missouri; that thereupon, on the thirtieth day of May, A. D. 1894, the Secretary of State for the State of Missouri delivered to said Cigar Makers' International Union of America a duly attested certificate of the record of the filing of the same description of the said label and trade-mark of the said Cigar Makers' International Union of America.

"That the said keeping for sale, vending and selling by the said Frederick Niesmann of the said cigars at the time and in the manner and form as hereinbefore set forth, was then and there contrary to the form of the statute in such cases made and provided, against the peace and dignity of the state."

The evidence shows that the Cigar Makers' International Union of America is a voluntary unincorporated association; that George W. Perkins is the president of said association; that on April 20, 1894, Perkins as president of the association, in the city of Chicago, Illinois, signed and duly acknowledged a petition addressed to the Secretary of State of the State of Missouri, in which it was stated that the association had adopted the above label (pasted in the information) as a trade-mark and prayed that it might be recorded and a certificate of its record be issued to the association; that on April 25, 1894, the petition was received by the Hon. A. A. Lesueur, Secretary of State, was by him filed and a counterpart certified to the association.

The evidence further shows that factory No. 2267, in the Ninth district of the State of Pennsylvania put a cigar on the market, branded "Caboose," and labeled the boxes containing these cigars with a label that they were union made and in other respects closely resembled the label and trade-mark of the association, but

which in truth and in fact was not genuine but an imitation and counterfeit.

The evidence also shows that the defendant, a manufacturer and jobber of cigars in the city of St. Louis, had on hand a lot of these ''Caboose'' cigars labeled with the imitation union label and that after being informed and with full knowledge that these cigars were labeled with a counterfeit label imitating the genuine label of the Cigar Makers' International Union, sold said cigars in the city of St. Louis. He was convicted on this evidence.

After a verdict of guilty was returned, defendant filed motions for new trial and in arrest of judgment, both of which were overruled.

1. It is contended by appellant that there is no description of the counterfeited label in the information, that the pasted printed label in the information is not sufficient, and that this defect is fatal to the information.

In United States v. Fisler, 4 Bliss. 59, the indictment was for forging United States treasury notes and it was held doubtful whether to paste the original forged instrument on the indictment as a substitute for a copy does or does not render the indictment defective.

In Commonwealth v. Irving, 2 Va. Cas. 337, it was held to be careless and irregular pleading, in an indictment for forging bank notes, to attach them to the indictment and to refer to them as ''herewith filed and made a part of the indictment,'' but that such irregularity was cured by verdict.

In the case of State v. Armstrong, 106 Mo. 395, the information was for malicious libel. The libel was contained in written and printed matter on the face of an envelope sent through the United States mail to the prosecutrix. To describe the libelous publication, the pleader pasted the envelope in the body of the information. It was urged by the appellant, against the information, that it did not contain the written allega-

tions of the libelous matter complained of. In commenting on this objection GANTT, P. J., speaking for the court, at page 414, said: ''Anyone reading the information in this cause would be at a loss to understand this objection.'' That it made no difference who did the writing in the information.

In State v. Williams, 32 Minn. 537, the indictment was for fraudulently disposing of mortgaged property. The indictment alleged that defendant executed a mortgage, ''of which a true copy is hereto attached marked 'Exhibit A' and hereby made a part hereof.'' On demurrer to the indictment, the court said that while it was a loose practice to attach a copy of the mortgage to the indictment and refer to it as a part of the indictment, instead of incorporating it into the indictment yet the court would have to consider it as a part of the indictment in passing on the demurrer.

It seems to us that pasting the label itself in the information was a most effectual means of informing the defendant of the instrument of which he was charged with using an imitation and counterfeit. But if it be conceded that the label should have been set forth in the writing, according to its tenor, and that the pasting of the instrument in the information for the purpose of describing it was bad pleading, the defect was cured by the statute of jeofails (sec. 2535) which provides, among other things, that a judgment on an indictment shall not be stayed, arrested, or in any manner affected ''for any defect or imperfection which does not tend to prejudice the substantial rights of the defendant on the merits.'' The pasted instrument fully and specifically informed the defendant of the genuine label, a counterfeit of which he was charged with unlawfully using, and it is not possible that he was prejudiced by the imperfection in the information and he was not denied any of his substantial rights on the merits.

Appellant, however, cites State v. Thierauf, 167 Mo.

429, as holding that a paster like the one in question is fatal to an information or indictment. The information in the Thierauf case alleged that the defendant, with intent to defraud, sold and exposed for sale bottles of "Castoria" with a certain label affixed upon them designating the compound by words and general design described and set forth in the label, a copy of which was pasted in the information. Following the label thus pasted was the charging part of the information to the effect that the label was in part the same to the eye as the general design then used and for a long time prior thereto used by the Centaur Company (a New York corporation) for designating the compound and preparation known as "Castoria" was in words and figures as follows: (Here follows the pasted copy of the label of the Centaur Company.)

The preparation sold by the defendant was known as the "Arthur Castoria," that sold by the Centaur Company as the "Fletcher Castoria." The information charged that the labels of the "Arthur Castoria" were only *in part* an imitation of the label of the "Fletcher Castoria," but no specific allegation as to what part of the Fletcher label was imitated by the Arthur label. In respect to this feature of the pleading GANTT, J., speaking for Division Two, of the Supreme Court, at page 441, said: "It is a cardinal principle in criminal pleading that it must contain an allegation of every fact which is essential to the punishment to be inflicted (1 Bish. Crim. Prac., sec. 81; State v. Hayward, 83 Mo. 299). In view, then, of the fact that upon the face of this information it appears that *only a part* of the label in the judgment of the pleader is an imitation of the Centaur Company's label, it at once becomes essential to know what that part it is. Is it the word 'Castoria,' or 'the Dr. Pitcher formula,' or is it some other catchword?"

In the case at bar it is not a part of the label of the Cigar Makers' International Union that is alleged

to have been imitated and forged but on the contrary the allegation is that the entire instrument was imitated and forged, and the reasoning in the Thierauf case is not applicable to the pleading in this case.

2. From the copy of the label presented to the Secretary of State as the trade-mark of the union, the autograph signature of Perkins, the president of the association, was erased and a space was marked at the end of the label in brackets, "for autograph signature of president." The label offered in evidence as the genuine trade-mark of the association had the autograph signature of Perkins as president. Appellant contends that there was a fatal variance between the recorded trade-mark and the one introduced in evidence for the reason that the one was signed by the president of the association and the other was not. It is the device that the association adopted as a trade-mark the law protects. The signature of the president to that device is not part of the device itself. The signature is only one of the means of authenticating the label when it is to be used. If it formed a part of the trade-mark itself, then every time the association changed its president it would be compelled to refile its label and procure a new certificate from the Secretary of State. To prevent this inconvenience the name of the president was purposely erased from the label filed with the Secretary of State and the device without the signature was accepted and recorded as the trade-mark of the Cigar Makers' International Union. There was no variance in the two exhibits and there being no reversible error in the record, the judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.